UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
ANGELIQUE LEWIS,

               Plaintiff,                      MEMORANDUM AND ORDER
                                                    17-CV-0066
   - against -

THE CITY OF NEW YORK, Police Officer
Steven Franzel, Shield No. 26765, Police Officer
JOHN DOE NUMBER 2 through 10, each officer
in his individual and official capacity as an employee
of the City of New York,

               Defendants.
----------------------------------------------------------x
GLASSER, Senior United States District Judge:

      Plaintiff Angelique Lewis ("Plaintiff" or "Lewis") brought this 42 U.S.C. §§ 1983, 1981, and 1988 action against Defendants City of New York (the "City"), Police Officer Steven Franzel ("Officer Franzel"), and eight other police officers whom she cannot name, (collectively, "Defendants"), alleging false arrest, malicious prosecution, a denial of her right to a fair trial, failure to intervene, negligent hiring, and assault and battery. (ECF No. 14 "Amended Complaint"). Pending before the Court is Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 28). For the reasons explained below, Defendants' motion is **GRANTED IN PART AND DENIED IN PART**.

## BACKGROUND

      On October 8, 2015, Justice Dineen Ann Riviezzo of the Supreme Court of the State of New York, Kings County, issued a search warrant for 704 Lefferts Avenue in Brooklyn, which is a three-story house comprised of a basement, first floor, and second floor, with one kitchen and bathroom on each floor. (ECF No. 30-1 Ex. A; Plaintiff's Response to Defendants' 56.1 Statement,

1

ECF No. 35, at ¶ 10). The warrant provided that there was probable cause for believing that marihuana and other related items would be found at the residence and that those items may be found on the person of a white male who was approximately six feet tall, weighed approximately 175-180 pounds, and had brown hair, brown eyes, and a beard. (ECF No. 30-1 Ex. A).

As of that date, Lewis was eight-months pregnant and rented a room on the second floor at the back of the house. (Amended Complaint ¶ 18; ECF No. 35 at ¶ 5). Her room contained a refrigerator and microwave, but no bathroom. (ECF No. 35 at ¶¶ 5-6, 9). Because the bathroom on the second floor was not in working condition, Lewis was forced to use the bathroom on the first floor. (*Id.* at ¶ 8). She claims that while she was permitted to pass through the kitchen on the first floor to use the bathroom, she was not permitted to use the kitchen and was restricted to using only the refrigerator and microwave in her room. (*Id.* at ¶¶ 11-12).

Later that evening at approximately 8:30 p.m., Officer Franzel and eight other officers searched the entire house and found drugs inside an open pantry cabinet in the kitchen on the first floor. (*Id.* at 14, 16). In the meantime, Lewis was taking a shower in the bathroom next to the kitchen. (*Id.* at 17). After the drugs were found, Officer Franzel knocked on the bathroom door three times, knocked down the door, ordered Lewis to step out of the shower and get dressed, and placed her in handcuffs. (*Id.* at 19-23). Lewis explained that she was a tenant on the second floor, eight-months pregnant, and had no knowledge about the drugs or other tenants in the house. (*Id.* at ¶ 25; Amended Complaint ¶ 20). The officers loosened her handcuffs and arrested her along with three other individuals. (ECF No. 36-1 at 3:5-17). Lewis claims she neither knew those individuals nor saw them in the house before. (*Id.*).

After Lewis was arrested, the officers transported her to the 71st precinct in a windowless van without air conditioning. (Amended Complaint ¶ 26; ECF No. 35 at ¶ 25). She claims that at

the precinct, she was handcuffed to a pole for several hours without food, water, or medical attention despite complaining of back and stomach pain and asking to see Emergency Medical Services workers. (Amended Complaint ¶¶ 27-30, ECF No. 35 at ¶ 30). After many hours, she was transported to central booking and charged with criminal possession of a controlled substance, criminal possession of marihuana, and criminally using drug paraphernalia. (Pierre Declaration, Exhibit C). The Criminal Complaint provided that Officer Franzel "OBSERVED [LEWIS] IN THE KITCHEN WITHIN THE ABOVE-MENTIONED LOCATION" where the drugs were found. (*Id.*).

After spending approximately 30 hours in custody, Lewis was arraigned and subsequently released around 2:00 a.m. on October 9, 2015. (Amended Complaint ¶ 35; ECF No. 35 at ¶ 44). She appeared in court once more before all charges against her were dismissed on April 29, 2016. (ECF No. 36-1 at 73:1-5; Amended Complaint ¶ 38). She filed this lawsuit less than one year later. (ECF No. 1).

## LEGAL STANDARD

Summary judgment is appropriate when there are "no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986). A genuine issue of material fact exists if a reasonable jury could find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the burden to demonstrate the absence of a genuine issue of material fact, and the Court must draw all reasonable inferences in favor of the non-moving party. *Id.* at 255.

If the summary judgment movant satisfies its initial burden of production, the burden of proof shifts to the non-movant who must demonstrate that a genuine issue of fact does exist. *Id.*

at 250. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 586. Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admission on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Once the nonmovant has met that requirement, its "allegations [will be] taken as true, and [it] will receive the benefit of the doubt when [its] assertions conflict with those of the movant." *Samuels v. Mockry*, 77 F.3d 34, 36 (2d Cir. 1996).

The Court's role in a motion for summary judgment is one of "issue-finding," not "issue-resolution." *Ramirez v. New York City Bd. of Educ.*, 481 F. Supp. 2d 209, 216 (E.D.N.Y. 2007). Therefore, the Court's charge is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## DISCUSSION

### I. Lewis's False Arrest Claim

Lewis alleges false arrest under Section 1983 and New York law, which are substantially the same claim.[1] *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007). To prove the elements of false arrest under New York law, a plaintiff must show: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994). Here, only the last element is in dispute because Defendants' claim that they had probable cause to arrest Lewis, which is a complete defense to an

---

[1] Lewis also claims false imprisonment under New York law, which is essentially the same claim as false arrest. *McSween v. Edwards*, 91 F. Supp. 2d 513, 524 (E.D.N.Y. 2000).

action for false arrest. *Id.* "Probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Jenkins*, 478 F.3d at 84. The relevant inquiry focuses on "the facts as the officers knew them in light of the specific elements of each crime." *Azurdia v. City of New York*, No. 18-CV-04189 (ARR) (PK), 2019 WL 1406647, at *10 (E.D.N.Y. Mar. 28, 2019).

Considering the totality of the circumstances, *Jenkins*, 478 F.3d at 90, the Court finds that there is a genuine issue of material fact as to whether Officer Franzel had probable cause to arrest Lewis for the crimes with which she was charged. To "possess" means "to have physical possession or otherwise to exercise dominion or control over tangible property." N.Y. Penal Law § 10.00(8). Defendants' argue that Officer Franzel reasonably believed that Lewis exercised dominion or control over the recovered drugs simply because she lived at 704 Lefferts Avenue. Looking at the facts as Officer Franzel knew them at the time of Lewis's arrest, the Court disagrees. Officer Franzel knew from either searching 704 Lefferts Avenue or from Lewis herself that the residence had three floors, with kitchens and bathrooms on both the first and second floors, that Lewis rented a room on the second floor of the house, which contained its own refrigerator and microwave, and that Lewis did not know the other tenants in the house. Defendants' claim that Lewis "had free and open access to the first floor kitchen" where the drugs were found but in the same breath acknowledge that the only way to access the only usable bathroom was to pass through the first floor kitchen. (ECF No. 31 at 9). Further, Officer Franzel also knew, from the search warrant itself, that drugs were allegedly to be found on the person of a six-foot-tall man and Lewis clearly does not match that description. Accordingly, a reasonable juror could disagree that Lewis had dominion or control over the drugs in the kitchen on the first floor on which she did not live.

Lewis was also charged with criminally using drug paraphernalia, which makes someone who "knowingly possesses or sells" drug paraphernalia guilty of that charge. N.Y. Penal Law § 220.50. For the same reasons stated above, there is an issue of fact as to whether Officer Franzel had probable cause to arrest Lewis for committing that crime. Moreover, it appears that as support for these charges, Officer Franzel claimed he observed Lewis in the kitchen where the drugs were found. (Pierre Decl., Exhibit C). That statement was clearly false. Accordingly, Defendants' motion for summary judgment of Lewis's false arrest claims is denied.

## II. Lewis's Malicious Prosecution Claim

To determine whether a plaintiff has pleaded and proved a Section 1983 claim against a state actor for malicious prosecution, the Court looks to the elements of a malicious prosecution claim under New York law, which are: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Manganiello v. City of New York*, 612 F.3d 149, 160–61 (2d Cir. 2010); *Lanning v. City of Glens Falls*, 908 F.3d 19, 25 (2d Cir. 2018). Each of these elements are addressed below.[2]

Under New York law, "[a] criminal action is commenced by the filing of an accusatory instrument with a criminal court." N.Y. Crim. P. Law § 100.05. A person "who does not file a complaint commencing a criminal proceeding may be found to have instituted the proceeding for malicious prosecution purposes when the person plays an active role in the initiation and continuation of criminal proceedings against [the] plaintiff." *Mazza v. City of New York*, No. 98-CV-2343 (ILG), 1999 WL 1289623, at *6 (E.D.N.Y. July 13, 1999). Officer Franzel, by arresting

---

[2] There is no dispute that the criminal proceeding was terminated in Lewis's favor on April 29, 2016. Even if there was a dispute, the Court finds that the proceeding was terminated in a manner indicating Lewis's innocence. *Lanning*, 908 F.3d at 29.

Lewis and falsely stating that he observed her in the kitchen where the drugs were found, played an active role in the initiation and continuation of the criminal proceedings against her.

"In the context of a malicious prosecution claim, probable cause . . . is the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of." *DiBlasio v. City of New York*, 102 F.3d 654, 659 (2d Cir. 1996). For the same reasons noted above in connection with Lewis's false arrest claim, the Court concludes that there is a genuine issue of fact as to whether Officer Franzel had probable cause for purposes of her malicious prosecution claim.

Regarding the last element, malice means "that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996). In most cases, the lack of probable cause "tends to show that the accuser did not believe in the guilt of the accused, and malice may be inferred from the lack of probable cause." *Id.* Because there is a genuine issue of fact as to whether Officer Franzel had probable cause, there is an issue of fact as to whether he acted with malice. Accordingly, Defendants' motion for summary judgment of Lewis's malicious prosecution claim is denied.

### III. Qualified Immunity

Defendants argue that in the alternative, Officer Franzel is entitled to qualified immunity on Lewis's false arrest and malicious prosecution claims. A police officer is entitled to qualified immunity where "(1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act." *Jenkins*, 478 F.3d at 87. According to the Second Circuit, an officer's determination is objectively reasonable if there

was "arguable" probable cause at the time of the arrest—that is, if "officers of reasonable competence could disagree on whether the probable cause test was met." *Id.*

As this Court previously noted in *Grant v. City of New York*, No. 15-CV-3635 (ILG), 2019 WL 1099945, at *11 (E.D.N.Y. Mar. 8, 2019), the "arguable" probable cause standard has no place in the false arrest or malicious prosecution context. Probable cause is already evaluated from the standpoint of an "objectively reasonable police officer" and there is no difference between the "objective reasonableness" standard employed in the qualified immunity test and that of a traditional probable cause analysis. *Id.* Accordingly, because there is a genuine issue of material fact as to whether Officer Franzel had probable cause to arrest Lewis, he is not entitled to qualified immunity at this stage.

## IV. Lewis's Failure to Intervene Claim

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014). "An officer who fails to intercede in a constitutional violation is liable for the preventable harm caused by the actions of other officers." *Id.* Whether the officer had a "realistic opportunity" to intervene is normally a question for the jury, unless, "considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Id.* at 244.

Lewis alleges that there were eight other police officers who were present when she was arrested. While Lewis claims that Officer Franzel was the officer who entered the bathroom and handcuffed her, it is unknown whether the other eight officers were present when she was handcuffed and explained to Officer Franzel that she was merely a tenant on the second floor who knew nothing about the drugs that were recovered. Accordingly, there is an issue of fact as to

whether those officers had an opportunity to intervene and Defendants' motion for summary judgment of Lewis's claim is denied.

## V. Lewis's Fair Trial Claim

Lewis claims that in forwarding false information to prosecutors, Officer Franzel violated her right to a fair trial. (Amended Complaint ¶ 64). "When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123, 130 (2d Cir. 1997); *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016) (holding that "*any* information fabricated by an officer can serve as the basis of a claim for a denial of the right to a fair trial.") (emphasis in original). To establish a violation of the right to a fair trial, a plaintiff must prove that "an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Garnett*, 838 F.3d at 279. Here, there is a genuine issue of material fact as to whether Officer Franzel's false statement that he observed Lewis in the kitchen where the drugs were found is likely to influence a jury's verdict. There is no dispute that he forwarded that information to prosecutors to include in the criminal complaint or that Lewis was deprived of her liberty as a result of that false statement. Accordingly, Defendants' motion for summary judgment of Lewis's claim is denied.

## VI. Lewis's State Law Assault and Battery Claims

Under New York Law, an "'assault' is an intentional placing of another person in fear of imminent harmful or offensive contact" and a "'battery" is an intentional wrongful physical contact

with another person without consent." *United Nat. Ins. Co. v. Waterfront New York Realty Corp.*, 994 F.2d 105, 108 (2d Cir. 1993). Defendants argue that because Lewis did not raise an excessive force claim or allege any physical injuries stemming from her arrest, her assault and battery claims must fail. (ECF No. 31 at 16). Lewis argues that because Officer Franzel did not have probable cause to arrest her, placing her in handcuffs was an unwanted touching that constitutes battery. (ECF No. 34 at 17). Because there is an issue of material fact as to whether Officer Franzel had probable cause to arrest Lewis and he intended to and did use bodily contact to restrain Lewis without her consent, and the contact was offensive in nature, Defendants' motion for summary judgment of Lewis's battery claim is denied. *Evans v. Solomon*, No. 06-CV-3284 (SLT), 2011 WL 609806, at *4 (E.D.N.Y. Feb. 15, 2011).

On the other hand, while Lewis alleges that she was in "distress," (Amended Complaint ¶ 20), when Officer Franzel knocked down the bathroom door while she was taking a shower, she does not allege that she was in fear of imminent harmful or offensive contact. Further, there is nothing in the record to suggest that Officer Franzel intended to place Lewis in fear of such contact, or intended to do anything other than arrest the person inside the bathroom. Accordingly, her assault claim is dismissed.

### VII. Lewis's Negligent Hiring Claim

Lewis also claims that the City "knew or should have known through the exercise of reasonable diligence that the individual defendants were potentially dangerous" and the "City's negligence in screening, hiring, training, disciplining, and retaining these defendants proximately caused" her injuries. (Amended Complaint ¶¶ 73-74). There is nothing in the record to support those allegations. Accordingly, Defendants' motion for summary judgment of Lewis's negligent hiring claim is granted.

## CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment of Lewis's false arrest, malicious prosecution, failure to intervene, denial of the right to a fair trial, and battery claims is **DENIED** and their motion for summary judgment of Lewis's negligent hiring and assault claims is **GRANTED**.

SO ORDERED.

Dated: Brooklyn, New York
July 12, 2019

/s
I. Leo Glasser                                    U.S.D.J.